All rise. The United States Court of Appeals for the Ninth Circuit is now in session. The case of Alex Salvador Barahona v. Merrick Garland has been submitted on the briefs. The case of Drina N. Putz against Kiliok Kiyakasi has been submitted on the briefs. The case of Luis Alberto Montes Hernandez v. Merrick Garland has been submitted on the briefs. And the case of Tonya K. White v. Kiliok Kiyakasi has also been submitted on the briefs. So the first case set for oral argument this morning is the case of Maria del Carmen Rodriguez v. Merrick B. Garland. If counsel is ready to proceed, I guess you're appearing by video, both of you. You may begin. Thank you, Your Honor. May it please the Court, my name is Stephen Robbins, the attorney for the petitioner in this case. I would like to reserve two minutes for rebuttal. There's a couple things I'd like to highlight today about this case. First, substantial evidence does not support the agency's finding that the medical records that were withheld by a prior counsel were superfluous because they were covered in testimony and quote, thoughtfully weighed by the immigration judge below. It's true that there was testimony about counseling while the petitioner was detained. But if we actually look at the immigration judge's decision as it relates to hardship, the immigration judge found that all the respondent's children are healthy, including her four qualifying relatives. He did mention that Veronica had one quote, one significant medical issue about four years ago, referring to the alcohol overdose. And then he added, but that appears to have been a one time issue that was dealt with. And that is not a reoccurring issue. That's at 122 of the record. What the medical records show, however, these are the records that were in the possession of prior counsel, but not filed with the court, is that both Alejandro and Veronica had been diagnosed with adjustment disorder and depressed mood while the petitioner was detained in immigration custody. And that question is especially important because in this case, what we're looking at is the prospect of having a prolonged separation from their mother if she's deported. Counsel, with regard to the supplemental records, am I correct that the date of the last medical record was 2014? That's correct. And I think what that shows is that prior counsel early on in the case was involved in gathering documents, making assessments about the case. And then as the case got closer to trial, the ball was dropped. These records weren't filed. There was no follow through with with counselors or request for psychological evaluations later on. But but but counsel, with regard to the record, so that would have been the last record was about six years before the hearing. Right. Approximately. I believe the hearing was in 2018, four years and four years before the hearing. And so why isn't the BIA's view of this where it noted that all of these don't demonstrate that the outcome may have been different, given that they were all approximately four years or longer before? Why does the record compel a different conclusion as to whether the result may have been different? Right. Well, again, I think that 2014 provides an important window into the hardship, because what we have is it is a period of time when the petitioner was detained. The family was separated from their mother. And so that's when we have these mental health diagnoses. And the testimony was was clear that they went to counseling after they were reunited with their mother. There was some improvement in their mental health. But again, the hardship question is one of, OK, but hypothetically, what's going to happen in the future when they're separated again? And so it's less important exactly what was happening in February of 2018 on the day of the hearing than it is to know. OK, how did these children fare during a prior period of time when they were separated from their mother? I think that question is really critical. And there's other issues. I'm sorry. Counsel, I'm not going to put any details on the record because I don't I don't think it would it would be beneficial. But I've read all of these records is is everything in these records good for your client's case or. And again, I'm not going to discuss any of the details in the treatment records. But aren't there some things in these records which would move your client's case backward if this had been presented to the immigration judge? I don't think so necessarily. I mean, I think that there is medical records about the petitioner, her long battle with depression. The fact that, you know, she struggled with with depression for a really long time. That was totally left out of the record. And even though I guess I would have to know exactly what facts you're referring to. But I think it's normal for a parent to go through a difficult time. And for the kids, especially when they're teenagers, to have some disagreements with their parents and those sorts of things. But I don't think that there was anything in the records that were withheld that that damaged the case. And in fact, another important point I think that is worth mentioning is the issue of alternative forms of relief. Prior counsel went out of her way to portray this as a case where there were viable immigration alternatives. She filed a family visa petition from the petitioner's son. She brought it up at court. And we know from Matter of Racines, one of the three seminal cases on hardship, that immigration alternatives is one of the major factors in measuring hardship. And so the prior counsel left the court with the impression that Ms. Rodriguez had viable forms of immigration alternatives, that even if she's deported, there's a way for her to come back. And that's simply not true. And it was important for prior counsel to make that clear. And it was important, I think, for her to not even file the visa petition in the first place. It's a waste of time and a waste of money, frankly, to file a visa petition for someone who doesn't qualify for an immigrant visa. And then to go to court and to say, look, we've got this other thing pending that's going to provide an alternative form of immigration relief. I think definitely shows that she was prejudiced. And the thing about hardship analyses is that there's no it's easy to want to have a silver bullet. One hardship factor that's clear and obvious and above and beyond what's required. But the law is clear in Montreal. It says that hardship is to be considered in the aggregate. Even if you don't have that silver bullet hardship factor, you've got to look at a constellation of factors that includes things like alternative forms of relief, the mental health of the children. How did the children fare during a separation? How the mental health of the respondent even can play an important role. And so when that's the legal system that we're dealing with and we have a case where there were three or four things that were either left out or the court was misled to believe that there are immigration alternatives when there is not. Then the question at issue is whether or not, not whether or not she would have won, but just whether or not it could have made a difference. And I think that that's clearly the case. And so I think that let me ask you, counsel, so you think may have been different, a difference from the prejudice standard of may have affected the outcome of the proceedings. Seems like that's what you're arguing in your brief. Well, it certainly may have made in this case, it came down to the one issue hardship. So it may have impacted the outcome of proceedings. Certainly, if if she had been adequately represented below and if these if the evidence had presented been presented that the attorney had and if the court hadn't been misled to believe that there were immigration alternatives. I think that the outcome of the proceedings could have been different. Certainly. And I think I'm into my two minutes. You want to reserve the balance of your time. You may. Thank you. Thank you. May it please the court. My name is Jesse Lorenz and I represent the attorney general in this matter. I think it's important to point out here that this is all evidence that she sought to submit after hearing for the immigration judge. At that point, she bore a heavy burden of showing that it would impact what may have impacted the outcome of the proceedings here. I don't think she can do that, especially given that most of the evidence is from 2014. And before when the hearing was held in 2018, I think it's important to note that during their testimony in 2018, before the immigration judge, the petitioner and her two children who are the main hardship factors here. All testified that they did have mental health issues in 2014, the children that is. But then by 2018, they were no longer seeking counseling for that and they were doing well mentally. And that's reflected in their testimony. That's an important factor here. It's her burden to show how this would have impacted the proceedings. But if you're talking about something that happened in 2014, by 2018, they're saying everything is better. Then that is a big problem with their case. Additionally, they presented evidence of the mother's hardship or the mother's mental health struggles. But again, the latest document we have about that is from 2013. Again, the hearing wasn't until 2018. It's her heavy burden to show that her mental health may have had some impact on the hardship the children would suffer. But that's never really been adequately fleshed out. She needs to do more than just say it could, it might. This is her heavy burden on remand or reopening to prove these things. And I think on this record, we just cannot say that there were and is enough here. Also- Can I ask you, Mr. Lorenz, because I'm kind of focused on the standard that was applied here. And in your briefing, you argued that the BIA did not apply a higher standard and that it applied the may have affected standard. But I'm just wondering, by requiring Ms. Rodriguez to show that the IJ may have reached a different result on the hardship issue, didn't the BIA basically, or I guess could it be argued that they speculated as to how the IJ might come out, which is something that our case law says it's not the BIA's role to do. Can you respond to that? Well, again, because this is like a post hoc motion, she has the heavy burden of showing that it may have had an impact. That's her burden, not the board's. And I think it's reasonable to conclude that a fact finder wouldn't have changed the result of the case when we're talking about evidence that predated the hearing by four years and also was considered by the immigration judge. The immigration judge considered petitioner's testimony about the incidents that happened in 2014. That was thoroughly weighed. That was presented. That was credited. That was all before him in 2018. And again, in 2018, the mother and her two children testified that they were no longer struggling mentally or that they weren't seeking counseling at least and that they were doing well in school or whatever their other endeavors were. So I think it's not enough just to say, hey, we have this evidence that wasn't presented before. We want a whole new trial. You have to prove more to get essentially a do-over. This was evidence that also, again, this evidence, it just can't be shown to make any difference when we're talking about four years prior to the actual hearing. So I think that's important to know that it was their burden, their heavy burden. If I can interrupt. When you say you don't get a do-over, well, it's not as though this is a case in which we had a good lawyer who could have presented a better case. This is basically coming to us because of an argument of ineffective assistance of counsel. So I think for present purposes, we are supposed to assume that it was ineffective assistance of counsel. The BIA pre-dermitted the matter of Lozada question. So it's not a do-over in that sense. The question is, may the result have been different, may have it affected? So it's not a do-over in the sense of they had a fair trial if everybody was doing their job and now they want to do it a little better. That's not quite right. I guess I would disagree with that assessment of the board's handling of the matter of Lozada. The matter of Lozada is kind of more of a procedural evidentiary standard that the non-citizens have to produce to even… I'm not sure you take my point. We're here in this posture on the assumption that there was ineffective assistance of counsel, correct? I guess I don't agree with that assessment. I think we can assume that she satisfied Lozada, but I don't know if that necessarily proves ineffective assistance of counsel. But even assuming arguendo… The BIA did assume that the matter of Lozada was complied with and assumed ineffective assistance of counsel. But given the evidence in front of us, says the BIA, the may affect standard wasn't satisfied. Okay. I mean, I guess I won't quibble with you on that, but again, prejudice is something that she has to show to prevail on ineffective assistance of counsel. And the documents that she wants presented I just don't think meet that standard. I mean, it doesn't… It's evidence of something that was considered, was testified to as no longer really a problem. It's something in the past, and I guess I just don't see how looking back into the past would show prejudice when it was already considered that the children had had mental health issues in 2014. Well, in talking about the competency of counsel, it seems here that the BIA also failed to address Ms. Romero's competency, and I thought it was error under this Court's precedent to do that. Specifically, I think it's the case of Madavia, Madavia v. Ashcroft, which held that the BIA must begin its analysis by asking if competent counsel would have acted otherwise, and that failure to explain the omission is abuse of discretion. And the BIA failed to do that here. Isn't that true? Well, I think at bottom, if she can't show prejudice, it doesn't require a remand in this situation. Tell me your authority for that. Offhand, I'm sorry, and that wasn't an argument that was presented, so I would say it's not exhausted at this point. He's never raised that argument before. It's not a question of exhausted because it obviously couldn't have been the BIA's failing if there was one couldn't have been presented to the agency. It's a question of waiver, yes. Yes, yeah, I think that's a fair way of putting it. And, again, it's just the prejudice is the main issue here, and I just don't think we can show that based on this record. This is her heavy burden to prove this, and with this evidence we can't. But here it looks like that. BIA evaluated the medical evidence Ms. Romero supposedly had on hand to determine whether the IJ would have determined the hardship question differently. But I think in our case of Morales Apolinar, our quote noted that the petitioner does not need to actually explain exactly what evidence she would have. And isn't that what's happening here? Well, I can't speak to what additional evidence she might have, but, I mean, it seems like she's presented everything she wished to present in her motion to remand. But, again, I don't know if I can answer that question. I'm not privy to what evidence may or may not have been presented because we just, you know, we wouldn't know, I guess. Did that answer your question? I'm not sure if that was exactly what you said. It seems like, and maybe you can correct me if I'm wrong, that the court need only rely on it as evidence that a competent attorney would have submitted this kind of evidence. And I don't think the court is supposed to actually evaluate the merits of the evidence. Am I wrong on that? Well, I mean, to prevail on a motion to remand, she has to show that it would have had an impact on or may have had an impact on the outcome of her case. I don't think to meet her burden before the board, it was just enough to say, hey, I would have done things differently if I were the attorney in charge of this case. And I think, you know, the attorney in the prior case. It's similar to a Strickland type of analysis where whatever the test is may have been different, et cetera. You still have to show that a competent counsel, based on what the petitioner claims competent counsel would have done, that that may have made a difference, right? Well, Your Honor, Strickland doesn't apply in immigration. I understand that, but there's still a prejudice analysis. Well, right, and my argument is that there was no prejudice shown here. She can't just say, I would have done things differently. She has to show that there would have been an impact on her case. If she'd had competent counsel. Well, and I think on the record, there's a disagreement. You know, a former counsel defended herself, and she's never really presented any counter arguments to why she didn't present that evidence. And, you know, from what former counsel said, if she didn't really stand up well in preparation, she didn't handle questioning very well. But that's never been rebutted by her. I know your time's about up, but I just wanted to ask, have you all considered mediation in this case? I have. It hasn't been presented to me, so I guess I haven't considered it personally. Would this be the type of case that you would consider mediation? Generally, I don't know. Unless there's some sort of alternative remedy here, but that hasn't been presented to me. In fact, the opposing counsel has made it clear that he doesn't think she has an alternative remedy. So I don't know if it would really be effective here. Well, sometimes mediation results in a sort of deferral of action by the government and so on. It doesn't necessarily mean that there's a legal remedy available. Sure. I mean, if this court wants mediation, I'd be happy to do that. My personal opinion is that I guess I don't have enough information on hand to make an opinion one way or the other. Like I said, if there's no alternative remedy, it may not amount to much of anything, but we wouldn't be opposed. We'd be happy to do a mediation if that's what this court orders. Thank you. Thank you. Mr. Robbins. Thank you, Judge. I think two quick things. Morales is illustrative because in that case, what was discovered is the existence of a qualifying relative that hadn't been disclosed below. And there wasn't a need for the petitioner in that case to explain exactly how that new qualifying relative would have suffered. Just that like, hey, this could have changed the analysis. We have a whole other family member, but they weren't required to then submit doctor's letters and additional evidence. That's for the fact finder below. And so this case is very similar. We don't have to win the case before this panel. We just have to show that it could have made a difference if she had competent counsel. And the issue of 2014 records versus 2018 records, again, the hardship analysis isn't on February of 2018. How were the kids suffering on that day? The hardship analysis is in a hypothetical future where you're deported. How will your children suffer? And so in that case, it's irrelevant how the kids were doing exactly in February. If we can show that there were records that, hey, they went through a period when they were separated from their mother. Their mother was, in a certain sense, deported from their family. And we know how they were impacted. And, yes, once they were reunited, they improved and they did better. And at the time of trial, they'd been living with their mother for about four years. And so the idea that because there's this gap, somehow the older evidence doesn't matter or wouldn't have affected the analysis is just wrong. Let me ask you, have you considered mediation? We would consider it if the government's open to doing that, for sure. Any other questions? Well, Mr. Robbins and Mr. Lorenz, thank you very much for your oral argument presentations here today. The case of Maria del Carmen Rodriguez versus Merrick Garland is submitted. Thank you both. Thank you.
judges: MURGUIA, FLETCHER, BENNETT